UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FRANICAL KING,

        Plaintiff,

vs.                                 Case No.  3:09-cv-229-J-MCR

MICHAEL ASTRUE, Commissioner of the
Social Security Administration,

        Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision

denying her application for Social Security benefits.  The Court has reviewed the record, the

briefs, and the applicable law.  For the reasons set forth herein, the Commissioner's

decision is **REVERSED** and **REMANDED** for proceedings not inconsistent with this opinion.

## I.    PROCEDURAL HISTORY

Plaintiff protectively filed applications for a period of disability and disability insurance

benefits ("DIB") on June 23, 1998, alleging an inability to work since October 17, 1996.  (Tr.

69-72).  The Social Security Administration ("SSA") denied these applications initially and

upon reconsideration. (Tr. 55-58).  Plaintiff then requested and received a hearing before an

Administrative Law Judge, Edward Bayouth-Babilonia (the "ALJ"), on September 23, 1999.

(Tr. 24-54).  On January 18, 2000, the ALJ issued a decision finding Plaintiff was not

disabled (Tr. 13-20), however, this Court reversed that decision and remanded the case

_____

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate
Judge.  (Docs. 6 and 9).

back to the Commissioner after the Commissioner filed a motion for remand to permit re-evaluation of Plaintiff's residual functional capacity ("RFC"). (Tr. 342-43).

A second hearing was conducted on March 4, 2003 (Tr. 291-340) and on July 25, 2003, ALJ Bayouth-Babilonia issued a second decision again finding Plaintiff was not disabled. (Tr. 270-84). Once again, Plaintiff appealed to this Court and upon the Commissioner's motion to remand, the Court reversed the ALJ's decision and instructed the ALJ to conduct a supplemental hearing and "utilize the special technique in the regulations to analyze any mental impairment and issue a new decision." (Tr. 529-30).

A third hearing was held on March 20, 2006 before a new ALJ, Jimmy Coffman. (Tr. 591-603). ALJ Coffman issued his decision on October 13, 2006 denying Plaintiff's claim. (Tr. 515-28). On November 8, 2006, Plaintiff filed a Request for Review by the Appeals Council. (Tr. 510), which was denied. (Tr. 506). Accordingly, the ALJ's October 13, 2006 decision was the final decision of the Commissioner. Plaintiff timely filed her Complaint in the U.S. District Court on March 3, 2009. (Doc. 1).

## II.   NATURE OF DISABILITY CLAIM

### A.   Basis of Claimed Disability

Plaintiff claims to be disabled since October 17, 1996, due to back pain and depression.

### B.   Summary of Evidence Before the ALJ

As of Plaintiff's date last insured, December 31, 2001, Plaintiff was forty-five (45) years of age with a high school education. (Tr. 29). Plaintiff had past relevant work as a garment worker, seamstress, and home attendant. (Tr. 526). Plaintiff claims she became

2

disabled on October 17, 1996 as a result of a lower back injury she sustained while at work. Plaintiff also claims she is unable to work due to depression and that the depression also began when she injured her back.

As this appeal deals primarily with Plaintiff's mental impairment, the Court will limit its discussion to the medical evidence regarding Plaintiff's depression. Plaintiff began treatment at Meridian Behavioral Healthcare in December 1998 for depression. Plaintiff reported she had been depressed since she hurt her back at work about two years earlier. (Tr. 208). In December 1998, during her intake evaluation, Plaintiff was assigned a GAF score of 40.[2] (Tr. 215). It appears she attended group and individual therapy for a period between December 1998 and March 1999. (Tr. 203-16).

On April 7, 1999, Plaintiff underwent a consultative examination with Lance I. Chodosh, M.D. (Tr 217-22). Plaintiff presented with a "depressed, tearful affect" and Dr. Chodosh noted Plaintiff's medical history included depression since her injury. (Tr. 218). Dr. Chodosh opined Plaintiff was:

> able to see, hear, and speak normally. She is physically able to walk and stand normally. She is physically able to sit in a normal fashion. She is able to bend, lift, carry. She cannot squat regularly because of obesity. She is physically able to handle objects of size and weight appropriate for her size, age, and

---

[2] The Global Assessment of Functioning ("GAF") Scale describes an individual's overall psychological, social, and occupational functioning as a result of mental illness, without including any impaired functioning due to physical or environmental limitations. Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) at 32 (4th ed. 1994). A GAF score of 31 to 40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school). Id. A score of 41-50 indicates serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting), or serious impairment in social or occupational functioning (e.g. no friends, unable to keep a job). Id.

> bone structure.  She is able to travel.  She is able to comprehend
> and follow directions, but probably is not currently able to relate
> normally to others.

(Tr. 220).

On April 22, 1999, Plaintiff presented for a psychiatric consultative examination before Linda Abeles, Ph.D.  (Tr. 231-33).  Plaintiff cried throughout the evaluation and "presented herself as being in significant emotional distress."  (Tr. 232).  Upon evaluation, Plaintiff's mood and affect appeared depressed.  Id.  Dr. Abeles noted Plaintiff's results from the MMPI-2 test indicated a "poor tolerance to stress and pressure as well as a proclivity to exaggeration of her symptoms."  (Tr. 233).  Dr. Abeles diagnosed a pain disorder and assigned Plaintiff a GAF of 55.  Id.  Dr. Abeles found Plaintiff's current psychological condition "would not appear to constitute a hindrance which would prevent her from obtaining and maintaining employment."  Id.

On April 30, 1999, a non-examining psychologist, J. Patrick Peterson, Ph.D., completed a Psychiatric Review Technique Form (a "PRTF") in which he found Plaintiff had no limitations in her activities of daily living, maintaining social functioning, and no episodes of deterioration or decompensation.  (Tr. 241).  He also found Plaintiff seldom had deficiencies in concentration, persistence, or pace resulting in a failure to complete tasks in a timely manner.  Id.

It appears Plaintiff stopped attending therapy for a period, but then returned for therapy at Meridian Behavioral Healthcare in July 1999 and continued treatment until January 2002.  (Tr. 504, 385).  Indeed, Plaintiff attended counseling sessions with a licensed social worker, Mary Hollinger, on July 28, 1999, August 12, 1999, August 18, 1999, September 10, 1999, and September 27, 1999.  (Tr. 248-50, 494-97, 502-02).  During these

4

sessions, Plaintiff was often weepy.  On August 24, 1999, Ms. Hollinger filled out an interrogatory indicating Plaintiff suffered from an affective disorder and demonstrated appetite and sleep disturbances, psychomotor agitation, decreased energy, feelings of guilt or worthlessness, and difficulty concentrating or thinking.  (Tr. 244).  Ms. Hollinger stated Plaintiff's depression began when she injured her back and was no longer able to work (Tr. 245) and opined Plaintiff was markedly limited in her ability to maintain attention and concentration, complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods.[3]  (Tr. 246).  Finally, Ms. Hollinger found Plaintiff to be severely limited in her ability to be aware of normal hazards and take appropriate precautions and to travel in unfamiliar places or use public transportation.  (Tr. 247).

On November 16, 1999, Edward Infante, M.D. completed the same interrogatory again finding Plaintiff suffered from an affective disorder and reported symptoms of appetite and sleep disturbance, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking, and hallucinations.  (Tr. 258).  Dr. Infante found Plaintiff was moderately limited in her ability to carry out detailed instructions.  (Tr. 260).  He also opined Plaintiff's physical condition caused her to be moderately limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and complete a normal workday and workweek without interruptions from

---

[3] It appears Ms. Hollinger found Plaintiff's inability to complete a normal workday and workweek was a result of both her physical disabilities and her depression as she wrote a note stating: "she is too physically disabled to put in a normal work day and her pain causes her to be very depressed."  (Tr. 246).

psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  Id.

On July 10, 2002, Plaintiff underwent a consultative mental examination with Candace L. Valenstein, Ph.D.  (Tr. 379-84).  Dr. Valenstein believed the information she obtained from Plaintiff during the evaluation was "fairly reliable."  (Tr. 381).  Plaintiff displayed a restricted range of affect and appeared to be depressed.  Id.  Plaintiff's reading ability was determined to be at a second grade level.  Accordingly, standard personality testing could not be administered as such required at least a fourth grade reading level.  Id.  Dr. Valenstein noted that during the evaluation:

> [Plaintiff's] level of distress impaired her ability to maintain her
> level of concentration and attention.  It is most likely that this
> would occur in the work place as well.  Without treatment, it is
> unlikely that she would be able to work effectively.

(Tr. 382).  Dr. Valenstein completed a mental RFC form and determined Plaintiff was moderately limited in her ability to understand, remember, and carry out short, simple instructions.  (Tr. 383).  Plaintiff was also markedly limited in her ability to understand, remember, and carry out detailed instructions and her ability to make judgements on simple work-related decisions.  Id.  Further, Plaintiff was slightly limited in her ability to interact appropriately with the public, supervisors, and co-workers and was moderately limited in responding appropriately to work pressures and changes to a routine in a usual work setting.  (Tr. 384).

On June 28, 2006, Plaintiff underwent another consultative mental examination.  This time, she was examined by Eugene J. Rankin, Ph.D.  (Tr. 569-90).  Dr. Rankin found Plaintiff to be a reliable historian.  (Tr. 569).  Dr. Rankin noted Plaintiff was alert and

oriented to person, place, time, and circumstances surrounding the reasons for the evaluation. (Tr. 572). He observed Plaintiff was able to remain on task and follow brief but not complex instructions. Id. Along those lines, Dr. Rankin noted Plaintiff's sustained attentional skills were below expectations as a result of her emotional preoccupations. Id. Dr. Rankin described Plaintiff as being "chronically depressed, with her depression beginning at the time of her work-related injury on October 17, 1996." Id. Dr. Rankin went on to note that October 17, 1996 "was the point when her primary disabling clinical depressive condition began." Id. His diagnoses included major depressive disorder, severe, recurrent episode and pain disorder associated with psychological factors and a general medical condition and assigned her a GAF of 40 current and for the past year. (Tr. 572-73). Dr. Rankin also noted Plaintiff's reading level was below the necessary reading level required for a valid interpretation of the MMPI-2 test. (Tr. 572). Accordingly, Dr. Ranking opined Dr. Abeles should not have administered that test. (Tr. 573). He stated:

> Ms. King probably did not fully understand much of what she answered on the MMPI-2, and this probably accounts for the results interpretation of "results from the MMPI-2 were consistent with a poor tolerance to stress and pressure as well as proclivity to exaggeration of her symptoms." Certainly, given her clinical presentation and her symptom report in spite of her MMPI-2 results, Ms. King is [sic] most certainly has longstanding depression, and was certainly depressed in April of 1999.

Id.

Dr. Rankin completed a mental RFC for Plaintiff and found she had marked limitations in her abilities to: understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;

sustain an ordinary routine without special supervision; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and respond appropriately to changes in the work setting.  (Tr. 575-76).  Dr. Rankin found Plaintiff had moderate limitations in her abilities to: remember locations and work-like procedures; understand, remember, and carry out very short and simple instructions; work in coordination with or proximity to others without being distracted by them; ask simple questions or request assistance; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others.  Id.

Dr. Rankin also completed a PRTF which he stated represented the period from October 17, 1996 to the present.  (Tr. 577).  In the PRTF, Dr. Rankin determined Plaintiff suffered from an affective disorder satisfying the requirements of Listing 12.04.  (Tr. 577).  Additionally, Dr. Rankin found Plaintiff was moderately limited in her activities of daily living and markedly limited in maintaining social functioning; maintaining concentration, persistence, or pace; and had no episodes of decompensation.
(Tr. 587).

C.    **Summary of the ALJ's Decision**

A plaintiff is entitled to disability benefits when she is unable to engage in a substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of

not less than twelve (12) months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a) (2009)[4]. The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. § 404.1520(a). First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or a combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c).

Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(g). Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

In the instant case, the ALJ determined Plaintiff met the nondisability requirements of the Act and was insured for benefits through December 31, 2001, her date late insured. (Tr. 521). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date, October 17, 1996, through her date last insured. Id. At step two, the ALJ held Plaintiff had the following severe impairments: "disorders of the back (discogenic and degenerative), low back pain and hypertension." Id. The ALJ also noted

---

[4] All further references to the C.F.R. will be to the 2009 edition unless otherwise noted.

Plaintiff had a history of depression, diagnosed as an adjustment disorder, which for the period at issue was not severe.  Id.   At step three, the ALJ concluded Plaintiff did not meet or equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 524).

The ALJ then determined Plaintiff retained the RFC to " lift up to 10 lbs. occasionally; sit for about 6 hours in an 8-hour workday; and stand and/or walk about 2 to 4 hours in an 8-hour workday."  Id.  In determining Plaintiff's RFC, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms to be "not entirely credible."  (Tr. 525).

At step four, the ALJ determined Plaintiff was unable to perform any of her past relevant work.  (Tr. 526).  At step five, the ALJ relied on the vocational expert at the first supplemental hearing's testimony and found that based on Plaintiff's age, education, work experience, and RFC, Plaintiff was "capable of making a successful adjustment to other work that existed in significant numbers in the national economy."  (Tr. 527).  Thus, the ALJ found Plaintiff was not disabled.

## III.    ANALYSIS

### A.    The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence.  Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as

adequate to support the conclusion. <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing <u>Walden v. Schweiker</u>, 672 F.2d 835, 838 (11th Cir. 1982) and <u>Richardson</u>, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. <u>Edwards v. Sullivan</u>, 937 F.2d 580, 584 n.3 (11th Cir. 1991); <u>Barnes v. Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. <u>Foote</u>, 67 F.3d at 1560; <u>accord</u>, <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**B.     Issues on Appeal**

Plaintiff argues three issues on appeal. First, Plaintiff believes the ALJ erred in finding Plaintiff's mental impairment was not severe. (Doc. 13, pp. 12-16). Second, Plaintiff claims the ALJ improperly disregarded the opinions of two of Plaintiff's caregivers. (Doc. 13, pp. 17-21). Finally, Plaintiff argues the ALJ erred in discrediting her testimony regarding her symptoms. (Doc. 13, pp. 21-25). The Court will examine each of these claims, however, as the second issue is dispositive, the Court will begin with it.

## Whether the ALJ erred in disregarding the medical evidence from
## Mary Hollinger and Dr. Rankin

Plaintiff argues the ALJ erred in disregarding the medical evidence from Mary Hollinger, a licensed social worker, and Dr. Rankin, a consultative examining psychologist. Specifically, Plaintiff points out that Ms. Hollinger, while not a doctor, provided treatment to Plaintiff on numerous occasions and rendered opinions on Plaintiff's ability to perform work-related functions. The Commissioner responds in a footnote that while the ALJ did not "specifically reference Hollinger's opinion in the decision, the ALJ discussed copious evidence that supports his finding that Plaintiff's mental impairment was not severe during the relevant period." (Doc. 16, p.8).

An ALJ is required to consider all of the evidence in the claimant's record when making a disability determination. See 20 C.F.R. §§404.1520(a). In addition, the ALJ must state the weight afforded to the evidence considered. Ryan v. Heckler, 762 F.2d 939, 941 (11th Cir. 1985). Specifically, the judge "should state the weight he accords to each item of impairment evidence and the reasons for his decision to accept or reject that evidence." Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990). Indeed, "[u]nless the [ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (quoting Stawls v. Califano, 596 F.2d 1209, 1213 (4th Cir. 1979)). Although the ALJ is required to consider all of the evidence, he is not required to discuss all of the evidence presented, but rather must explain why "significant probative evidence has been rejected."

Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

While it is true a social worker's opinion is not technically that of "an acceptable medical source," the ALJ is not permitted to simply ignore it. The Regulations provide that in cases of mental impairments, an acceptable medical source's opinion is relevant to determining "your ability to understand, to carry out and remember instructions, and to respond appropriately to supervision, coworkers, and work pressures in a work setting." 20 C.F.R. § 404.1513(c)(2). A licensed social worker does not qualify as an "acceptable medical source," 20 C.F.R. § 404.1513(a), and cannot establish the existence of a medically determinable impairment. SSR 06-03p. However, the Regulations allow "evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work." Id.; 20 C.F.R. § 404.1513(d).

Social Security Ruling 06-03p further points out that "[w]ith the growth of managed health care in recent years and the emphasis on containing medical costs," medical sources, such as licensed clinical social workers "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists." SSR 06-03p. Therefore, "[o]pinions from these medical sources, who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." Id. The Ruling further provides that among the factors to consider when evaluating the opinions of "other sources" are the length of time and frequency of treatment, consistency with other evidence, the degree to which the source presents relevant evidence to support the opinion, how well the opinion is explained, and whether the source has a special expertise. Id. Finally, the

Ruling states that it may be appropriate to give more weight to the opinion of an "other source" medical source than to an "acceptable medical source" if the medical source has seen the claimant more often and has provided better supporting evidence. Id.

Here, the ALJ did not even mention Ms. Hollinger's opinions. Ms. Hollinger opined Plaintiff was markedly limited in her ability to maintain attention and concentration, to complete a normal workday and workweek without interruptions from psychologically based symptoms, to perform at a consistent pace without an unreasonable number and length of rest periods, and was severely limited in her ability to be aware of normal hazards and take appropriate precautions and to travel in unfamiliar places or use public transportation. (Tr. 246-47). While the ALJ was free to reject these opinions if he so chose, he was not free to totally ignore them as they were provided by a medical provider who had an opportunity to meet with and observe Plaintiff on several occasions and speak directly to Plaintiff's ability to perform work-related tasks. Williams v. Astrue, No. 3:07-cv-541, 2008 WL 1930619, *2 (M.D. Fla. Apr. 30, 2008) (error for ALJ to disregard opinion of chiropractor simply because it was not an "acceptable source of medical evidence"); Reliford v. Barnhart, 444 F.Supp.2d 1182, 1188 (N.D. Ala. 2006) ("improper and unreasonable" for ALJ to reject opinions of treating physical therapist due to his not being acceptable medical source); O'Connor v. Barnhart, No. C03-3081-MWB, 2004 WL 2192730, at *5 (N.D. Iowa Sept. 28, 2004) ("ALJ is not free to disregard the opinions of health care professionals simply because they are not medical doctors.") (citing Shontos v. Barnhart, 328 F.3d 418, 426 (8th Cir. 2003)); Alcantara v. Astrue, 257 F. App'x. 333, 334-35 (1st Cir. 2007) (ALJ committed error by ignoring opinions of social worker). As such, the case will be remanded for the ALJ to consider the opinions of Ms. Hollinger and to clearly utilize the factors set forth in SSR 06-03p when

explaining what weight, if any, he gives to those opinions.

With respect to Dr. Rankin, Plaintiff notes Rankin examined her on June 28, 2006, over four years after Plaintiff's date last insured, and found she suffered from an affective disorder which caused marked limitations in her ability to perform numerous work-related activities. (Tr. 575-76). Although he saw Plaintiff well after her DLI, Dr. Rankin specifically opined Plaintiff's depression began at the time of her work-related injury, October 17, 1996. (Tr. 589). Dr. Rankin continued and found that October 17, 1996 was "the point when her primary disabling clinical depressive condition began." Id. Despite noting this finding by Dr. Rankin, the ALJ apparently discounted Dr. Rankin's findings by stating:

> the report of Dr. Rankin, while it may indeed establish that the claimant is currently suffering from a severe mental impairment, does not sufficiently establish the severity of the impairments during the requisite period at issue from October 17, 1996 through her date last insured of December 31, 2001.

(Tr. 524). The Commissioner responds that the ALJ did not err in disregarding Dr. Rankin's opinions because he "was no doubt moved" to do so because the evidence he addressed, "which was actually compiled during the period at issue, demonstrated Plaintiff's condition was not severe." (Doc. 16, p.14). Additionally, the Commissioner argues Dr. Rankin's findings were "suspect." Id. While these reasons may indeed be proper reasons to discredit the opinions of Dr. Rankin, the ALJ did not provide them as his reasons. Instead, the ALJ simply stated Dr. Rankin's report did "not sufficiently establish the severity of the impairments during the requisite period at issue . . ." (Tr. 524). As the Court must focus its review on the reasons provided by the ALJ for rejecting the evidence and not the post hac

justifications presented by the Commissioner[5], the undersigned is left to conclude that the ALJ decided to ignore Dr. Rankin's opinions because they were not rendered prior to the date last insured.  This, on its own, is not a proper reason to reject relevant medical evidence under the circumstances present in this case.  <u>Boyd v. Heckler</u>, 704 F.2d 1207, 1211 (11th Cir. 1983) (that a doctor did not examine the claimant until two years after the expiration of her insured status and then rendered an opinion about an injury which occurred five years earlier "does not render his medical opinion incompetent or irrelevant to the decision in this case") (superseded by statute on other grounds, <u>Elam v. Railroad Retirement Bd.</u>, 921 F.2d 1210 (11th Cir. 1991));  <u>Calhoun v. Astrue</u>, No. 3:07-cv-970, 2008 WL 5381919, *6 (M.D. Fla. Dec. 23, 2008) (noting that statement suggesting "retrospective medical opinions from treating physicians may be given no weight merely because they are retrospective," was "an incorrect statement of the law"); <u>Edel v. Astrue</u>, No. 6:06-cv-440, 2009 WL 890667, *21 (N.D.N.Y. Mar. 30, 2009) ("Neither a treating nor examining physician's opinion should be dismissed merely because it is retrospective.") (citing <u>Dousewicz v. Harris</u>, 646 F.2d 771, 774 (2nd Cir. 1981)); <u>Smith v. Bowen</u>, 849 F.2d 1222, 1225 (9th Cir. 1988) ("[M]edical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis.") (citation omitted).

Here, Dr. Rankin not only examined Plaintiff, but also reviewed Plaintiff's medical records.  Dr. Rankin expressly opined Plaintiff's disabling depression began back in October 1996, prior to the date last insured.  Moreover, the PRTF completed by Dr. Rankin

---

[5] <u>See</u> <u>Owens v. Heckler</u>, 748 F.2d 1511, 1516 (11th Cir. 1984)(court declined "to affirm simply because some rationale might have supported the ALJ's conclusion" noting "[such an approach would not advance the ends of reasoned decision making").

specifically stated it was an assessment from October 17, 1996 to the present. (Tr. 577). Additionally, Dr. Rankin expressly stated his belief that Plaintiff was depressed in April 1999. (Tr. 573). As such, the ALJ was required to consider and discuss why he accepted or rejected Dr. Rankin's opinions. Based on his statement that Dr. Rankin's report might "indeed establish that the claimant is currently suffering from a severe mental impairment," it is obvious the ALJ found some of Dr. Rankin's opinions persuasive. However, the ALJ's decision to reject the report simply for being rendered after the date last insured is error.

Accordingly, the undersigned will remand this case to the Commissioner for further proceedings. Upon remand, the ALJ shall reconsider the opinions of both Mary Hollinger and Dr. Rankin.

### Whether the ALJ erred in failing to find Plaintiff's depression was severe at Step Two of the sequential evaluation.

Plaintiff also argues the ALJ erred in failing to find her mental impairment, depression, was severe. At step two, the ALJ is called upon to determine whether a claimant's impairments are severe. By definition, this is a "threshold inquiry." McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986). In Brady v. Heckler, 724 F.2d 914, 920 (11th Cir.1984), the Eleventh Circuit held "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Brady, 724 F.2d at 920. As the McDaniel court noted, the analysis at step two "allows only claims based on the most trivial impairments to be rejected." McDaniel, 800 F.2d at 1031. A "[c]laimant need show only that her impairment is not so slight and its effect is not so minimal." McDaniel, 800 F.2d at 1031. However, the Eleventh

Circuit has elaborated by noting: "'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986); see also 20 C.F.R. § 404.1521(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.").

The Commissioner responds by arguing that the ALJ's decision to find Plaintiff's depression was not a severe impairment was supported by substantial evidence. Specifically, the Commissioner argues Plaintiff's medical records indicate Plaintiff's condition improved when she took her medication, Plaintiff was able to provide care for her disabled husband, and Plaintiff was abusing her narcotic pain medications. (Doc. 16, p.13). According to the Commissioner, these facts indicate Plaintiff was not suffering from a severe mental impairment, unrelated to prescription drug abuse, which lasted or could be expected to last for twelve continuous months. Id.

The Court does not agree. First, the Court need not spend much time addressing the reasons provided by the Commissioner as these reasons were not relied upon by the ALJ. The ALJ did not mention Plaintiff's condition improved when she took medication. Instead, the ALJ repeatedly noted Plaintiff's medication was well-tolerated and was helpful, but also noted Plaintiff had to stop taking any medication because she could not afford it. (Tr. 523). Additionally, the ALJ did not appear to rely on the fact that Plaintiff was able to care for her husband as a reason to find her depression was not severe. Finally, the ALJ did not rely on any claim that Plaintiff was abusing pain medication in his analysis of the severity of her depression. Instead, the ALJ mentioned Plaintiff received treatment at Meridian Behavior

18

Healthcare for both depression and addiction to pain medication. (Tr. 523).

In any event, the undersigned finds there are certainly medical records indicating Plaintiff's depression was more than a slight abnormality which had such a minimal effect on her that it would not be expected to interfere with Plaintiff's ability to work. For example, the medical records from both Mary Hollinger and Dr. Rankin, which the undersigned has already determined the ALJ improperly ignored or discounted, certainly demonstrate Plaintiff's depression was more than a trivial impairment and had a significant affect on her ability to work. As the Court is remanding this case to permit the ALJ to more fully consider these opinions, he is also instructed to also re-evaluate whether Plaintiff's depression constituted a severe impairment. In addition to considering the opinions of Ms. Hollinger and Dr. Rankin, the Court directs the ALJ to the opinions of Dr. Infante[6], Dr. Chodosh and Dr. Valenstein, which all indicate Plaintiff's depression may have had more than a trivial effect on her ability to work.

### Whether the ALJ provided adequate reasons for finding Plaintiff's testimony was "not entirely credible."

Finally, Plaintiff argues the ALJ erred in evaluating her subjective claims, including her pain. (Doc. 12, pp. 12-14). During the second supplemental hearing on March 20, 2006, Plaintiff claimed she cried all the time, her back hurt all the time, she was unable to walk well and had to drag her right leg. (Tr. 594-95). Plaintiff also testified she needed to take a nap everyday from 11:00 a.m. until about 4:00 p.m. because she was in such pain

---

[6] While the ALJ did discuss Dr. Infante's opinions, he appears to have discounted them in part because he believed Dr. Infante was not a mental health professional. (Tr. 523). The Court believes Dr. Infante was indeed a mental health professional as he was employed at Meridian Behavior Healthcare, a mental health facility. The ALJ may wish to analyze this further.

and was depressed. (Tr. 596-97). Plaintiff stated her back pain was a ten on a scale of one to ten and that immediately before the hearing, she took five Tylenol pills, which made her feel bad. (Tr. 599). Plaintiff stated the only way to relieve her pain was to lie down. (Tr. 601-02).

Pain is a non-exertional impairment. Foote, 67 F.3d at 1559. The ALJ must consider all of a claimant's statements about her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying
> medical condition and either (2) objective medical evidence that
> confirms the severity of the alleged pain arising from that
> condition or (3) that the objectively determined medical condition
> is of such a severity that it can be reasonably expected to give
> rise to the alleged pain.

Foote, 67 F.3d at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). Once a claimant establishes through objective medical evidence that an underlying medical condition exists that could reasonably be expected to produce pain, 20 C.F.R. § 404.1529 requires the Commissioner to consider evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms in deciding the issue of disability. Foote, 67 F.3d at 1561. Pain alone can be disabling, even when its existence is unsupported by objective evidence, Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

In this case, the ALJ properly applied the pain standard. The ALJ specifically stated he found Plaintiff's "medically determinable impairments could have been reasonably expected to produce the alleged symptoms," but the ALJ determined Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely credible." (Tr. 525).

When an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.

Here, the ALJ provided two reasons for discrediting Plaintiff's testimony: (1) that she had been suspected of "possible symptom magnification" in the past and (2) "[o]ther documentation of pain allegations [were] based on [Plaintiff's] self-report." (Tr. 525). Plaintiff argues the second reason must be disregarded as being "inadequate." (Doc. 13, p.24). The Court agrees. Because pain is subjective, it stands to reason that most of the documentation regarding pain will be based on Plaintiff's own complaints. To the extent the ALJ was attempting to discredit Plaintiff's subjective claims on the basis that they were not supported by objective medical evidence, it is well-settled that such is not proper. Gibson v. Heckler, 779 F.2d 619, 623-24 (11th Cir. 1986) ("It is well established that reversible error exists if complaints of subjective pain are disregarded simply because they are not supported by objective clinical and laboratory medical findings.") (citations omitted).

As for the first reason, Plaintiff takes issue with the ALJ's use of the words

"suspected" and "possible." (Doc. 13, p.24). The Court has reviewed the two reports in which Plaintiff was suspected of symptom magnification and finds that during a functional capacity evaluation, the examiner noted Plaintiff exerted "sub-maximal effort and symptom exaggeration." (Tr. 169). Specifically, the examiner explained that when testing an individual's ability to engage in certain movements, such as bending, squatting, and reaching; the examiner will attempt to distract the individual to see if there are any improvements in the individual's abilities. If there are improvements, if the pain behavior decreases, or if the individual's affect improves, it indicates the individual's abilities are better than what he/she demonstrated during the tests and the individual is attempting to control the test results. (Tr. 176). When Plaintiff was distracted, her grip strength, straight leg raises, and reaching overhead improved significantly. Id. Additionally, Plaintiff demonstrated very poor effort on several other tests of her functional abilities. (Tr. 175-88). Indeed, Plaintiff passed only seven of the twenty-three validity criteria during the examination. (Tr. 188). Accordingly, the examiner determined Plaintiff demonstrated "very poor, voluntary submaximal effort not related to pain, medical impairment, or disability." Id.

Additionally, the second examiner to accuse Plaintiff of exaggeration was Dr. Linda Abeles. Dr. Abeles noted that Plaintiff's results on the MMPI-2 test indicated a "proclivity to exaggeration of her symptoms." (Tr. 233).

Symptom exaggeration or malingering are valid reasons to discredit a claimant's subjective complaints. See Sellers v. Barnhart, 246 F.Supp.2d 1201, 1213 (M.D. Ala. 2002) (malingering constituted substantial evidence upon which the ALJ could base his decision to discredit Plaintiff's subjective complaints of pain). However, in this case, numerous other medical sources examined Plaintiff and did not suspect she was malingering or

exaggerating her symptoms.  Indeed, at least two such examining sources, Dr. Valenstein and Dr. Rankin, specifically found Plaintiff to be providing reliable information.  (Tr. 381 and 569).  Moreover, Dr. Abele's determination that Plaintiff was exaggerating was based at least partly on the results of the MMPI-2 test.  (Tr. 233).  As Dr. Rankin explained, in order for the MMPI-2 test to be administered, the patient needed to be able to read at a sixth grade level.  (Tr. 573).  After testing Plaintiff, Dr. Rankin observed Plaintiff's reading ability was below a sixth grade level[7] and therefore, Dr. Rankin believed Plaintiff "probably did not fully understand much of what she answered on the MMPI-2, and this probably account[ed] for the results interpretation of 'results from the MMPI-2 were consistent with a poor tolerance to stress and pressure as well as proclivity to exaggeration of her symptoms.'"  Id.

As the Court is remanding this case for the ALJ to correct several other issues, the Court will ask the ALJ to re-evaluate Plaintiff's credibility.  While doing so, the ALJ should provide more detail regarding his credibility findings, such as explaining what statements he finds not credible and why.

## IV.    CONCLUSION

For the foregoing reasons, the Commissioner's decision is hereby **REVERSED** and **REMANDED** pursuant to sentence four, 42 U.S.C. 405(g).  On remand, the ALJ shall (1) consider the opinions of Mary Hollinger and Eugene Rankin, M.D. and provide sufficient reasons supported by substantial evidence if he decides to reject the opinions, (2)  re-evaluate whether Plaintiff's depression was a severe impairment at step two of the sequential analysis, (3) reconsider Plaintiff's credibility, and (4) conduct any further

---

[7] Dr. Valenstein found Plaintiff's reading ability to be at a second grade level.  (Tr. 381).

proceedings deemed appropriate. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

Should this remand result in the award of benefits, Plaintiff's attorney is hereby granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days after the receipt of a notice of award of benefits from the Social Security Administration. **This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.**

**DONE AND ORDERED** at Jacksonville, Florida, this __19th__ day of March, 2010.

*Monte C. Richardson*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record